IN THE MATTER OF OWEN T. COFFIN, SURROGATE OF WESTCHESTER COUNTY.

*Interest on trust funds held by a surrogate — when the surrogate should be compelled to pay it over to the county treasurer — 1884, chap. 350.*

Where a General Term, acting pursuant to chapter 350 of 1884, makes an order directing a surrogate to pay over and transfer to the treasurer of his county all moneys and securities on deposit with him, or in his court, in trust for the several estates and persons to whom the same is payable, as appears by the accounts examined and approved by the said General Term, as provided in the said act, the order should require the surrogate to pay over not only the principal of the various funds received and held by him, but also all interest received by him from the persons with whom the said funds have been deposited.

MOTION by the surrogate of Westchester county to modify an order made by the General Term of the Supreme Court in the Second Department, in December, 1884, approving the report of a referee, appointed under chapter 350 of 1884 to examine the books of the said surrogate and report thereon to the court, and directing the surrogate to transfer and pay over the securities and funds in his hands to the county treasurer.

*Owen T. Coffin,* for the motion.

*David Cromwell,* county treasurer, opposed.

DYKMAN, J. :

It was made the law of this State by chapter 350 of the Laws of 1884, that the Supreme Court, at the first General Term thereof after the passage of that law, should appoint a suitable person for each county in the department to examine the books, accounts and vouchers of the Surrogate's Court of the county for which such appointment is made. That such person should proceed to make such examination and report, to the General Term appointing him, the amount of money and securities then on deposit with such surrogate or his court, the names of the estates or persons to which the same are credited, the original amount of such account, when and by whose order paid into such court, the payments made on each account, and the persons or party to whom paid, the places where such moneys have from time to time been deposited, or the securities in which the same is invested, the amount of any accrued interest on each account or fund, and the balance of such account then remaining in the hands of such surrogate, and where the same is deposited or in what securities invested. It was further provided by the law that after such reports were examined and approved by the General Term, an order should be made accordingly, and by the clerk transmitted to the surrogate, and that such surrogate should thereupon make an order directing the payment and transfer, and should pay over and transfer to the treasurer of the county all moneys and securities on deposit with him or his court in trust for the several estates and persons to whom the same is payable as appears by the said accounts of the surrogate so approved ; and that the county treasurer should receive and dispose of the same in the manner provided by section 2537 of the Code of Civil Procedure. By this section of the Code it is provided that all moneys collected by or paid to the county treasurer as therein prescribed, must be held, managed and invested and disposed of by him in like manner as money paid into the Supreme Court in an action pending therein. For the purpose of carrying into execution the provisions of this law, the General Term of the Supreme Court for the Second Department, at the September term in 1884, appointed a referee to make the examination of the books and accounts of the Surrogate's Court of the county of Westchester, and make a report thereon to the court as required by the act.

That referee performed the duties of his office and made a report of his proceedings to the court at the December term, in 1884. In his report he stated in detail all the facts required to be found, and that there remained in the hands of the surrogate, Owen T. Coffin, at the date of the report, which was December 8, 1884, the sum of $11,889.51.

This report after examination received the approval of the General Term, and an order was made accordingly, which was transmitted to the surrogate, and he obeyed the same so far as to transfer to the county treasurer all the securities deposited with him, and the principal of all moneys so held by him, but failed to pay over the interest which he had received on the moneys while they had been under his control. The amount of such accumulated interest found in the hands of Surrogate Coffin, by the report of the referee, was $1,470.91. Thereupon, the surrogate submitted a motion to the General Term, in February, 1885, to modify the order of the court confirming the report of the referee, so that the order may direct the payment, by the surrogate to the county treasurer, of the principal or balance of the moneys, or confirming those so made without interest thereon, except the balance of the proceeds of the sale of the estate of John H. Price, deceased, amounting to $1,631.45, which have been distributed and paid, and also striking from the report the sum of $157 as belonging to the estate of Henry Muller, deceased, which was paid before the date of the report.

The facts relating to the Price estate are these: In December, 1884, the surrogate made a decree for the distribution of the principal of $1,631.45 without interest, but when he was about to pay the same he informed the person who was to receive the money of the existence of the referee's report in this matter, which charged him with interest, and that he intended to question his liability therefor. Thereupon, that person elected to receive the money without the interest. Then the principal was paid over without the interest pursuant to the decree, and vouchers were given therefor, and the surrogate retained the interest, amounting to $372.04. Now he desires to have the whole sum and principal and interest omitted from the report. These facts entitle the surrogate to an omission of the principal sum from the report, but we will examine the question relating to the interest further on.

In relation to the sum of $157 in the Muller estate, the surrogate states in his affidavit on which this motion is founded that it was paid over on the 5th or 6th of December, 1884. That was two days before the date of the referee's report, and probably after he had made his investigation. The order will therefore be modified in that respect. These are the two exceptional cases named in the notice of motion.

In the case of *Carmellotte* v. *Guerber* the surrogate received $1,534.80, February 1, 1871. This money was deposited with the New York Life Insurance and Trust Company, where it drew interest, which was credited to the deposit down to the time of distribution, and then amounted to $107.06, but it was not paid over by the surrogate. The referee reports this sum still in his hands.

It is thus seen that with the exception of the Muller estate the surrogate disputes no fact reported to the court by the referee. The amount with which he is charged for interest has been received by him and accrued on the moneys and securities held by him in trust for the owners respectively. Yet he desires to retain it, and the reason assigned by him is, that the moneys on which this interest accrued came into his office for distribution, and his only duty was to retain the same for that purpose. So far as the duty of the surrogate goes in relation to distribution, that is the statutory requirement, and if he had held the same during the six weeks required for notice, and distributed the money then without interest, when none had accrued, his whole duty would have been performed. He would not be required to pay out more than he received. But the case presented is not that, nor like that. Here the surrogate received the money, but it was not called for, and he put it to usance where it earned interest, which accumulated and was credited to the principal, and became thus a part of the trust fund in his hands, or under his control, and belonged to the beneficiaries the same as the principal, and he is required to pay over all that he has received.

The law under which these proceedings were instituted plainly contemplated a case like this, for it required the referee to report the amount of any accrued interest on each account or fund, and the balance of such account then remaining in the hands of such surrogate. Clearly, the amount of accrued interest was to be

included in the balance of the account, else its ascertainment would be an idle ceremony, and the balance of such account remaining in the hands of the surrogate is the amount which, by section 4 of the act, he is required to pay over and transfer to the treasurer of the county, because that is the amount appearing by the accounts of the surrogate.

By what rule of law or ethics can the surrogate separate the principal from the accrued interest and pay over the one and retain the other? How does he obtain any personal right or title to the accrued interest? We have been referred to no authority to justify the claim of the surrogate, and we have found none. In his argument he claimed the right under his possession, but if that was sufficient it would enable him to retain the principal likewise, for he had the same possession of both. Exalted ethics will not justify such a claim.

Our conclusion is, that the surrogate must obey the first order and pay over the interest found due by the report including that of the two cases where he has paid over the principal and retained the interest.

The motion for modification should therefore be denied, except as to the sum of $157 in the estate of Henry Muller, and the sum of $1,631.48 in the estate of John H. Price, and as to these the original order should be modified by their omission therefrom.

BARNARD, P. J., and PRATT, J., concurred.

Order modified in accordance with opinion; order to be settled by DYKMAN, J.